MONROE, J.
Plaintiff alleges that she is the owner of lots 2, 3, and 4 in a certain square in that part of New Orleans which was formerly the city of Carrollton, and that defendant is in possession of lot 4 and part of lot 3, and refuses to surrender the same, wherefore she prays for judgment decreeing her to be the owner of said property and putting her in possession and for certain damages. Defendant alleges:
“That she and her authors in title have been in actual possession for more than * * * 70 years of the following described property, to wit:
“A certain piece of * * * ground, with all improvements * * * advantages and prescription * * * thereunto belonging * * * situated in the seventh district of 'this city (formerly the city of Carrollton * * *), in square 322 (formerly square 127B of the original subdivision of said city of Carrollton), which said piece * * * of ground measures 87'66" front on Nerónstx’eet (formerly Napoleon), with a depth and front on Dante street (foi'merly Adams) of 120 feet; thence on a line parallel with Nerón street and Mobile street (formerly Tenth) and running towards Dublin street of 35 feet; thence on a second depth line, parallel with Dante and Dublin streets, and running towards Mobile street, of 5 feet; thence on a line parallel with Nei'on and Mobile streets and running towards Dublin street of 45 feet; thence on a third depth line, parallel with Dante and Dublin streets, and running towards Mobile street, 85 feet to the rear line”
—which description may be better understood by reference to the rough sketches of the “Rothaas plat” and the “Pilie plat” which will be handed down as part of this opinion, and particularly by reference to the dotted lines which have been added by the .court to the “Pilie Plat,” as filed by plaintiff.
“Defendant specially denies that she has ever claimed title to' or possession of any px-operty that may 'be designated as lots 1 to 4, both inclusive, on the original plan of said square, made by Rothaas on February 22, 1836, and which, according to said plan, measures 117'6" in depth and front on Mobile street by 120 in depth and front on Dante street and forming the corner of said two streets, as originally laid out and platted.”
She then alleges that lots 1 to 4, according to the Rothaas plat, were acquired by the city of New Orleans from the' city of Carrolltion as the result of the consolidation of the two cities; that the city of Carrollton had acquired. them from Mrs.. Rodewald as per ordinance of April 13, 1870, pursuant to which another ordinance was passed on April 20, 1870, directing the issuance of a warrant for 840 in payment for the same, said property having been acquired for the widening of Tenth street (now Claiborne), which warrant was duly issued and delivered to said Mrs. Rodewald, through her agent, on April 23, 1870; that Mrs. Rodewald acquired said lots from A. B. Mitchell May 22, 1865; that Mitchell acquired them from the estate of Benjamin Fox on August 4, 1843; that Fox acquired them from Wm. Stone in 1836; and *976 that said lots, since the date of their said acquisition by the city of Carrollton in 1870, have belonged to said city and to the city of New Orleans, and have been in use as part of the public streets.

“Further answering, defendant avers that the property designated on the plan made by Pilie, surveyor, and attached to plaintiff’s petition as lot No. 2, is the same identical property designated on the original plan of said square by the number ‘3,’ and that the said property designated on said plan of said Pilie aforesaid, by the number ‘3,’ is that identical property designated on the original plan by the number ‘4,’ and the property designated by the number ‘4’ on said Pilie’s plan is actually that designated as lot 5 on the original plan; that the portion on Pilie’s plan not designated, but lying between the lot designated by him as lot 2 and the corner, * * * is the actual ground designated on the original plan by the number ‘2.’ ”
She reiterates that she has never claimed any of the property included in plaintiff’s title and alleges that plaintiff, on the other hand, has asserted title to property of which she is the owner, and she prays judgment against plaintiff for damages as for slander of title.
From such evidence as we-find in the record, we conclude that according to the original plan of the city of Carrollton, made by Zimple, surveyor, in 1833, the square in question was designated as No. 127 and measured 330 feet on each side. On June 4, 1833, it was sold to Oelestin Frederick and Philip I-Iarty, and on March 8, 1836, Harty acquired the undivided half interest of Frederick. In the meanwhile, on February 22, 1836, the square appears to have been platted as square B or 127B into lots by a surveyor named Rothaas, presumably at the instance of the owners, who divided it into 28 lots; 11 calling for 30 feet front each on Madison (now Dante) street by 117' 6" in depth, 11 of like dimensions fronting on Adams (now Dublin) street, 3 calling for 30 feet front on Tenth (now Claiborne) street, by a depth of 165 feet, and 3 of like dimensions fronting on Napoleon avenue (now called Nerón street), all, as will be seen by reference to the sketch marked “Rothaas plat,” heretofore mentioned. On March 16, 1836, Harty, .who then owned the entire square, sold lots 2, 3, and 4, as measuring according to the Rothaas plat each 30 feet front on Madison street by 117' 6" in depth, to Abraham De Young, and we take it to be *978 admitted 'by defendant’s answer that plaintiff through mesne conveyances has acquired De Young’s title. On March 21, 1836, Harty sold lot 1 to William Stone as measuring, according to the Rothaas plat, 30 feet front on Madison street by 117' 6'' in depth and front on Tenth street; and, while the links in the chain have not been produced, we take it for granted that (as defendant alleges) Stone sold to Fox, the estate of Fox to Mitchell, and Mitchell to Mrs. Rodewald, whose disposition of the property presents the principal issue to be determined. Defendant claims title by inheritance from Harty, and she and plaintiff have placed the following admissions of record, to wit:
“It is admitted that Philip Harty died, in this city, intestate on August 14, 1861, unmarried, leaving no ascendants or descendants, and leaving as Ms sole and only heirs his two sisters, Widow Marie Adele Harty Lambert and Widow Arthemise Harty Mitchel; that the property owned by said Philip Harty at his death was partitioned between Ms said two sisters above mentioned, * * * except some in the Fourth district that was sold to pay debts; that in said partition the property owned by said Philip Harty in square No. 127B (now square 322) in Carrollton, and being part of the property now in dispute, was acquired by decedent’s sister, Mrs. Marie Adele Harty Lambert. (This is not to be considered as an admission that Harty was the owner of the lot in dispute in this suit, but is intended to be descriptive.) It is further agreed that the property claimed by defendant is the same property inherited by Widow Marie Adele Harty Lambert and Widow Arthemise Harty Mitchel from their brother, Philip Harty, and the present defendant inherited same through Philip Harty.”
In connection with defendant’s title, we further find that on October 16, 1894, James Turner Burke, Miss Marion F. Burke, Georgie S. Burke, Nancy T. Burke, and Mary Adeline Burke, appearing as the sole surviving heirs of Mrs. Lambert, sold to Miss Marie Adele Burke (whom we take to be the plaintiff) certain lots in the square in question by the following description, to wit:
“Lots 5, 6, 7, 8, 9, 10, and 11 in square bounded by Madison, Ninth (now Nerón), Tenth, and Hamilton (now Dublin) streets. Lots 5 to 10 measure 163 feet front on Madison street by 117 feet in depth. Lot 11 measures 27 feet front on Madison street by 117 feet deep.”
There was then a conveyance of the property (in 1895) by defendant to John Watt, and (in 1897) a conveyance by Watt back to defendant, and (in 1900) a conveyance by defendant to Miss Nancy Turner Burke, of lots 10 and 11 and part of lot 9, as measuring 60 feet front on Madison street by 117' 6" in depth; and finally on September 1, 1910, a conveyance by Miss Nancy Turner Burke back to defendant of her right, title and interest in lots 5, 6, 7, 8, 9, 10, and' 11, in which the other heirs of Mrs. Lambert intervened and ratified and confirmed any and all previous conveyances, the lots being described as measuring each 30 feet front on Dante (now Madison) street by 117' 6'' in depth. Recurring now to what is said to have taken place in 1870 between Mrs. Rodewald and the city of Garrollton in regard to lot 1, defendant offered in evidence the report of a committee, which appears to have been adopted by the city council on April 13, 1870, and which reads:
“In matter of square 127A and 127B, we recommend the adoption of the plan submitted by the surveyor and a compensation of $40 each to Mrs. Rodewald and Mr. R. Swain for loss of ground and removal of improvements in widening Tenth street, as proposed in said plan.”
There is, then, another resolution of April 20th directing the mayor to draw two warrants of $40 each in favor of the parties named in the first resolution, “being compensation for loss of property”; and there is the stub of a warrant, “authorized April 20ih,” upon which there appears a receipt for the warrant purporting to be signed by “B. W. Fortier, Agent.”
In the same connection, however, it is proper to say that we find in the record a copy of a notarial act of date June 2, 1892. whereby Mrs. Rodewald, through Victor Fortier, as her agent, sold lot 1 in square 127B to Nicholas Sylvester for $40 cash.
*980 Defendant offered also a certified copy of the Rothaas plat on file in the office of the city engineer, upon the margin of which is the following memorandum:
“The plan of sq. 127B, modified to order of council, making tlie distances on Dublin and Madison 300 ft. instead of 320 ft. and the width of lots 27.33/n, instead of 30 ft. key lots 150 feet. [Signed] Wm. H. Williams,
Surveyor.”
And it is shown that Mr. Williams was the city surveyor in Carrollton for many years.
Mr. Pilie testified that the square in question originally measured 'hut 300 feet. In the tax research made by him, the conveyance to Frederick and Harty of June 4, 1833, is mentioned, and the property conveyed is referred to as:
“Lot 127 of original plan of Carrollton, measuring 325 on Tenth street and extending in depth along Madison street to Ninth street, on which it also measures 325' O''.”
There is in evidence a plat, made by Mr. C. Uncas Lewis, deputy city surveyor, at the request of Mr. J. Turner Burke, in accordance with the Rothaas plat, of lots 5, 6, 7, S, 9, 10, and 11, from which it appears that a strip 30 feet wide was taken from, the square in question for the widening of Mobile or Tenth (now Claiborne) street. Mr. J. Turner Burke, deputy city surveyor, testifies that, according to the original (Zimpel) plan of Carrollton, Mobile (now Claiborne) street was 150 feet wide, but that the present width is-180 feet, and that the original measurements of square 127 were 330 feet. We conclude that, whatever may have been the original dimensions of the square, a strip 30 feet wide, including lot 1, was taken for the widening of Tenth street (now Claiborne) ; but the evidence as to such original dimensions is inconclusive. Mr. Pilie testifies that it was 300 feet; Mr. Burke that it was 330 feet; Mr. William’s memorandum is ambiguous; and Mr. Lewis’ plat does not touch the question.
Opinion.
As Philip Harty was the sole owner of square 127B on March 16, 1836, it was his privilege to divide and sell it as he pleased; and on that day he sold to plaintiff’s author lots 2, 3, and 4 as measuring each 30 feet front on Madison street by 117 feet, 6 inches, in depth; and plaintiff is entitled to recover and be put in possession of those lots, provided they can be found and identified, for neither Harty nor his heirs, nor any one claiming under him, nor the city council of Carrollton, had any power, without some process of law, to divest the title or reduce the dimensions of the lots so acquired. The question here presented is therefore merely one of identification. The property purchased by De Young (plaintiff’s author in title) was separated from Tenth street by lot 1, which was represented and sold as having 30 feet front on Madison street; and, if lot 1 were still there, the side line of plaintiff’s lot 2 would still be 30 feet from the line of the street, and that is the way in which it is represented on the Pilie plat. But we have found that lot 1 has been thrown into and made part of the street, from which it follows that the lot now bordering on the street is that designated as lot 2 on the Rothaas plat, so that the Pilie plat, in representing lot 2 as still separated from the street by a lot (to which no number is giyen) 30 feet wide, is incorrect in that it places the side line of lot 2 30 feet farther away from the original line of the street than it was when the survey was made, although neither line has changed its position nor could have done so since that event, and as a consequence the lines of the other lots on Madison street must also be placed farther away from Tenth street, and lot 11 would have to be sought in Nerón street. If the square originally measured 330 feet, the situation ■ would xmoduce no embarrassment, unless it should turn out that Mrs. Rode *982 wald, after a lapse of 22 years, being, perhaps, informed that, according to the conveyance records, she still appeared to be the owner of lot 1, sold that lot a second time, and her vendor went into possession of lot 2, under the impression that it was lot 1, in which case the plaintiff may have •trouble with such possessor. On the other hand, if the square originally measured only 300 feet, plaintiff may have the trouble to which we have just referred; and the defendant will certainly be obliged to take, as her inheritance, lots measuring less than 30 feet front,- as called for by the Bothaas plat, since, after the sale of lots 1, 2, 3, and 4, measuring each 30 feet front, it would be impossible to find 7 more such lots within a total frontage of 300 feet, and the law in such cases is that the oldest title takes all the land called for by it, and those which •come later take" what they then find. C. C. 846, 847; Keller v. Shelmire, 42 La. Ann. 323, 7 South. 587. The heirs of Harty, including defendant, seemed at one time to have recognized the necessity' of suffering a reduction in the dimensions of lots 1 to 11, ns in the conveyance to defendant of October 16, 1894, lots 1 to 10 were described as measuring 163, and lot 11, 27 feet fron,t on Madison street, or a total of 190, as against the 210, feet, which is now claimed for them. In any event, plaintiff is now and as between her and the defendant entitled to a frontage •of 90 feet on Dante street, beginning at the present corner ofClaibox-ne avenue and running in the direction of Nerón street to the line separating lot 3 from lot 4, as shown ¡by both the Bothaas and Pilie plats of survey. Whether the fence erected by defendant is on that line, ox- whether it is on lot 3, thereby including part of that lot in the land claimed by defendant, we are unable to determine, and are of opinion that some further evidence should be adduced on that point.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that there now be judgment rejecting the claim of plaintiff to any part of the lot 4, as delineated on the plat of survey of square 127B by Bothaas of date February, 22, 1836, and fixing as the boundary of hex-property, on the Nex-on street side, the line between said lot 4 and lot 3, as per said plat. It is further decreed that the claims of both plaintiff and defendant for damages be rejected. "It is further decreed that this case be remanded to the district court for further inquiry into, and adjudication upon, the question of the location of the fence erected by defendant on, or in the vicinity of, the line between said lot 3 and lot 4. It is further decreed that plaintiff pay the costs of this appeal, and that the costs of the district court await the ultimate decision of that tribunal upon the question for the decision of which the case is remanded.